IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-01271-RBJ

JAMES TYRRELL and
HSP TECHNOLOGY, LLC,

    Plaintiffs,

v.

LEXIDAN, INC., and a
HAROLD ROTH,

    Defendants.

---

## ORDER

---

This case is before the Court on defendants Lexidan, Inc. and Harold Roth's motion to dismiss for failure to state a claim and lack of personal jurisdiction. ECF No. 18. For the reasons stated below, the Court grants defendants' motion.

### BACKGROUND

Plaintiff James Tyrrell is a Colorado resident and owner of HSP Technology, LLC ("HSP"), a Colorado limited liability corporation with its principal place of business in Boulder, Colorado. ECF No. 17 at 1. Defendant Harold Roth is a resident of California and founder of Lexidan, Inc. ("Lexidan"), a Kentucky corporation with its principal place of business in Kentucky. *Id*.

In October 2000, defendants started a website called www.horsephotos.com ("Horsephotos"). ECF No. 18 at 2. In 2001 Mr. Roth met with Mr. Tyrrell, a computer programmer, in Kentucky to discuss working together on the Horsephotos website. Mr. Tyrrell

1

took over the "back-end technology" for Horsephotos in April of 2002, while Mr. Roth continued to handle the "front-end content" and business of the website. *Id*. Since 2002, Mr. Roth functioned as the "primary maintainer" of the website. ECF No. 17 at 4. Instead of receiving payment for his services, defendants agreed Mr. Tyrrell would receive 20% equity in Lexidan. *Id*. Defendants have not provided Mr. Tyrrell with a stock certificate or any other documents reflecting his ownership interest in Lexidan, nor has he received any dividends or notice of shareholders' meetings. ECF No. 17 at 4.

Sometime during 2008, Mr. Tyrrell moved to Colorado and continued work on Horsephotos. ECF No. 27-1. During this relatively happy period, Mr. Tyrrell lived and worked in Colorado and communicated with Mr. Roth via telephone and email. ECF No. 17 at 2. In addition to providing back-end technology management, Mr. Tyrrell, also a professional photographer, occasionally attended horse races and took horse-racing photographs for use on the Horsephotos website. ECF No. 18 at 3. Though the parties never had a written agreement about the use of these photos, the photos were offered for licensing on the Horsephotos website. ECF No. 17 at 6. Mr. Tyrrell understood that in addition to his preexisting compensation agreement, defendants would either pay him a daily rate plus travel costs, or 40% of all licenses or other use of the photos through the website. *Id*. at 6–7. Defendants did license some of these photos to third parties, but Mr. Tyrrell was never paid any license fees. *Id*. at 7. Some of Mr. Tyrrell's photographs are registered images with the United States Copyright Office. *Id*. at 8.

In 2016, Mr. Tyrrell began development of a new platform for the Horsephotos website and was in contact with defendants via phone, email, or other internet services to discuss the new platform. ECF No. 17 at 5. Mr. Tyrrell incurred expenses for the development, which including paying third-party coders. *Id*. Between 2016 and 2018, Mr. Tyrrell paid all hosting costs for the

Horsephotos website from his personal bank account. *Id*. at 2. In exchange for this work, defendants promised Mr. Tyrrell 40% of revenue generated from the new platform, as well as reimbursement of all costs. *Id*. at 5.

In 2017 Mr. Tyrrell was serving as the Director of Technology for Horsephotos. ECF No. 17 at 2. During that time he shipped himself a new server for the website, which remained in Colorado. *Id*.

Things began to go downhill in 2018 when Mr. Roth "lost confidence" in Mr. Tyrrell and the new platform he was developing for Horsephotos. ECF No. 18 at 3. The new platform was scheduled to launch in fall of 2018, but around that time defendants refused Mr. Tyrrell's requests to provide a written agreement related to the new platform and the terms of the agreement. ECF No. 17 at 6. Mr. Tyrrell denied defendants access to the back-end of the website on the old platform ("the Legacy platform"). ECF No. 18 at 3. Defendants then moved the website to a new platform provided through a third-party vendor. *Id*. The website on the new platform (the "Roth platform") reproduced some of Mr. Tyrrell's photos, including some copyright-registered images. ECF No. 17 at 8.

Mr. Tyrrell alleges he never consented to the use, reproduction, display, or distribution of any of the photos he took on the Roth platform. *Id*. On the Legacy platform the photos were displayed with information identifying Mr. Tyrrell as the photographer and copyright owner. *Id*. On the Roth platform, such information did not appear, and instead "Horsephotos.com" was identified as the copyright owner. *Id*. at 8–9.

On May 2, 2019 Mr. Tyrrell filed this lawsuit alleging copyright infringement and altering of certain copyright management information under 17 U.S.C. § 501 and § 1202, as well as claims for breach of contract, promissory estoppel, and unjust enrichment. ECF No. 1. He

filed an amended complaint on August 2, 2019. ECF No. 17. He asserts that this Court has diversity jurisdiction as well as jurisdiction under 28 U.S.C. § 1338. ECF No. 17 at 2. Defendants moved to dismiss on August 16, 2019, alleging plaintiffs had failed to state a claim under Fed. R. Civ. P. 12(b)(6), and that this court lacks personal jurisdiction over defendants under Fed. R. Civ. P. 12(b)(2). ECF No. 18.

## STANDARD OF REVIEW

### A. <u>Personal Jurisdiction</u>

Prior to exercising personal jurisdiction over a defendant based on federal question jurisdiction, a district court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal citations and quotation marks omitted). If the federal statute is silent as to service of process, a district court looks to the law of forum state. *Id*. Because 17 U.S.C. § 501 and § 1202 are silent as to service of process, I must analyze the application of personal jurisdiction under both Colorado's long-arm statute and the Constitution. *See Job Store, Inc. v. Job Store of Loveland, Ohio, LLC*, No. 15-CV-02228-PAB-KLM, 2016 WL 9735786, at *2 (D. Colo. Sept. 7, 2016).

Prior to exercising personal jurisdiction over a defendant based on diversity jurisdiction, a district court must comport with both the forum state's long-arm statute and the Constitution. *Equifax Servs., Inc. v. Hitz*, F.2d 1355, 1357 (10th Cir. 1990). Thus in this case, both § 1338 jurisdiction and diversity jurisdiction lead to Colorado's long-arm statute.

Colorado's long-arm statute confers the maximum jurisdiction permitted under the Due Process Clause of the Fourteenth Amendment. *See AST Sports Sci., Inc. v. CLF Distribution*

4

*Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). Therefore, there is no "need for [a long-arm] statutory analysis separate from the due process inquiry required by *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945), and its progeny." *Id.* (quoting *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002)). The personal jurisdiction inquiry collapses into a single constitutional question. *Id.*

"Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Minimum contacts may be satisfied through a showing of either general or specific jurisdiction. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090–91 (10th Cir. 1998). The plaintiff bears the burden of showing that minimum contacts exist. *See AST Sports Sci.*, 514 F.3d at 1056. However, a plaintiff's "burden is light" at this stage. *Id.* In ruling on a Rule 12(b)(2) motion without holding an evidentiary hearing, a plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings*, 149 F.3d at 1091. To do so, the plaintiff "may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* The burden then shifts to the defendant to show that jurisdiction is not proper. *See id.* Any factual discrepancies must be resolved in the plaintiff's favor unless the allegations in the complaint are contradicted by affidavits. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

If sufficient minimum contacts exist, I will move on to the second prong of the due process inquiry, where I determine whether the exercise of personal jurisdiction over the

defendant offends "traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)). In other words, the exercise of personal jurisdiction over the defendant must be "reasonable" in light of the circumstances of the case. *Id.* Minimum contacts and reasonableness work hand in hand; "[t]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)) (internal quotations omitted).

## ANALYSIS

### A. <u>**Personal Jurisdiction**</u>

Parties agree that this Court does not have general jurisdiction over defendants Mr. Roth and Lexidan, who are residents of California and incorporated in Kentucky respectively. ECF No. 18 at 11; ECF No. 27 at 3. Therefore I only consider whether this court can exercise specific jurisdiction over defendants and whether doing so would comport with fair play and substantial justice. *Old Republic Ins.*, 877 F.3d at 903.

Specific jurisdiction exists when a defendant "purposefully directed" its activities at the forum state, and the alleged injuries "arise out of or relate to" those activities. *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King*, 471 U.S. at 472). Courts should focus on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). This defendant-focused test means that a court must ensure that this relationship arises out of "contacts that the 'defendant *[it]self*' creates with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). In other words, the contact cannot solely be between the

plaintiff and the forum state. *Id.* A plaintiff cannot show purposeful direction when the defendants' contact with the forum state results from plaintiff's unilateral decision to move after the formation of the relationship. *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1421 (10th Cir. 1988) (citing *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1247 (9th Cir. 1984)) (finding no purposeful direction when plaintiff's unilateral decision to move to the forum state requires defendants to contact the plaintiff there). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." *Trujillo v. Williams*, 465 F.3d 1210, 1219 (10th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotations omitted) (emphasis in original).

Defendants do not conduct business in Colorado, nor do they have any customers in Colorado. ECF No. 18 at 11. Defendants did not solicit or seek out Mr. Tyrrell in Colorado. That relationship began in Kentucky, more than six years before Mr. Tyrrell moved to Colorado. ECF No. 27-1. That the relationship began long before Mr. Tyrrell moved to Colorado strongly weighs against a finding that defendants purposefully "reach[ed] out beyond one state and create[d] continuing relationships and obligations with" a resident of the forum. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 913 (10th Cir. 2017) (quoting *Burger King*, 471 U.S. at 473); *see also Rambo*, 839 F.2d at 1421. Mr. Roth made an agreement with Mr. Tyrell in Kentucky, and six years later Mr. Tyrrell decided to move to Colorado. Nothing in Mr. Roth's actions suggest he should have "reasonably anticipate[d] being haled into court" in Colorado. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297(1980). *See also Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1247 (9th Cir. 1984) (holding that a plaintiff's decision to move states was not purposeful direction because holding otherwise would frustrate the purpose of the

requirement "that a *defendant's* conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," (internal quotations omitted)); *OMI Holdings, Inc.*, 149 F.3d at 1093 (citing *Hunt*, 728 F.2d at 1247, to support a requirement that "minimum contacts be based on the defendant's affirmative actions which create a substantial connection with the forum state"). Based on the facts alleged, plaintiffs have failed to show that defendants solicited the plaintiffs' business in Colorado.

Nor does the continuing relationship between the parties after Mr. Tyrrell's move sufficiently establish defendants' purposeful direction at the forum state. Though the existence of a contract is disputed, "[t]he bare fact that [defendant] entered into a legal relationship with [plaintiff], a Colorado entity, cannot establish sufficient contacts to satisfy the purposeful direction requirement." *Id*. at 910 (citing *Burger King*, 471 U.S. at 478). "We must instead determine whether [defendants] reach[ed] out beyond one state and create[d] continuing relationships and obligations" by evaluating "(a) the parties' prior negotiations, (b) their contemplated future consequences, (c) the terms of the[ir] contract, and (d) the parties' actual course of dealing." *Id*. (citing *Burger King*, 471 U.S. at 478) (internal quotations omitted).

To show defendants "reached out" into Colorado through the parties' continuing relationship, the plaintiffs point only to the course of their dealings. Specifically plaintiffs cite the work plaintiffs performed on behalf of defendants, that defendants directed the work through phone calls and other communications, and the fact that defendants sent plaintiffs' 1099 forms to Colorado. ECF No. 27 at 3–4.

That plaintiffs performed work for defendants in Colorado cannot establish purposeful direction because it depends solely on "plaintiff[s'] contacts with the defendant and forum," which cannot "drive the jurisdictional analysis." *Picot,* 780 F.3d at 1212–13. "[T]he fact that a

contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Id*. at 1213.

I need not rely on plaintiffs' allegation that defendants directed 1099 tax forms to them in Colorado. That allegation contradicts their allegations that Tyrrell was never paid for services he provided. ECF No. 17 at 4, 7. Defendants also submitted an affidavit by Mr. Roth claiming he never sent Mr. Tyrrell any 1099 forms. ECF No. 18 at 13. Had plaintiffs' allegations been consistent, I might take them as true. However because plaintiffs contradict their own allegations, and because they are further contradicted by Mr. Roth's affidavit, I need not rely on them. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) ("Any factual discrepancies must be resolved in the plaintiff's favor unless the allegations in the complaint are contradicted by affidavits.").

Defendants' direction of plaintiffs' work through phone calls and other correspondence is, without more, also insufficient. "Although phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts, such materials provide additional evidence that [defendant] pursued a continuing business relationship with a [forum plaintiff]." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277–78 (10th Cir. 2005) (citing *Far W. Capital*, 46 F.3d at 1077) (internal quotations omitted). Plaintiffs allege that there were hundreds of emails and many phone calls over the course of the parties' relationship. Defendants dispute that assessment and present an affidavit in support. ECF No. 18 at 12, ECF No. 22. However, even assuming plaintiffs' allegations are true, this would be the only factor weighing in favor of finding defendants reached out into Colorado.

Without more, I cannot conclude that defendants purposefully directed their activities at Colorado. Because plaintiffs have failed to allege purposeful direction, I need not consider

whether the injuries in question arose out of such direction. I conclude this Court lacks specific jurisdiction over defendants. Accordingly, defendants' motion to dismiss is granted. Plaintiffs' complaint is dismissed in its entirety, but without prejudice.

**ORDER**

Defendants' motion to dismiss, ECF No. 18, is GRANTED, but the claims are dismissed without prejudice.

DATED this 2nd day of March, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge